IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA | § § § | |
| VS. | § § | CIVIL ACTION NO. 4:14-cv-53 |
| EXXON MOBIL CORPORATION | § § § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES JUDGE:

Plaintiff, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, files its First Amended Original Complaint, complaining of Defendant EXXON MOBIL CORPORATION.

### I. PARTIES

1.1     Plaintiff, THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA ("ICSP"), is corporation incorporated under the laws of Pennsylvania, with its principal place of business at 175 Water Street, 18th Floor, New York City NY 10038.

1.2     Defendant, EXXON MOBIL CORPORATION ("Exxon") is a corporation incorporated under the laws of New Jersey, with its principal place of business at 800 Bell Street, Room 2605, Houston, TX 77002-7497.  Exxon has filed an appearance in this cause, and as such may be served with this amended complaint on its counsel of record, Mike Morris, Tekell, Book, Allen & Morris, L.L.P., 1221 McKinney, Suite 4300, Houston, Texas 77010-2010.

## II. JURISDICTION

2.1     Pursuant to 28 U.S.C. § 1332, the United States District Court has jurisdiction of this action, since it is between citizens and corporations of different States and the matter in controversy exceeds the sum or value of $75,000.

## III. VENUE

3.1     Venue is proper in this district and division pursuant to 28 U.S.C § 1391(a)(1), as the judicial district and division where defendant Exxon resides and has its principal place of business in Texas; and 28 U.S.C § 1391(a)(2), as the judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred.

## IV. BACKGROUND FACTS

4.1     On or about January 12, 2013, Kevin Roberts ("Roberts") and Arturo Munoz ("Munoz") were injured in an explosion at Exxon's Baytown refinery, while in the course and scope of their employment with Savage Services Corporation ("Savage").  While working on a tank in the flexicoker unit of Exxon's Baytown refinery, there was an explosion.  Roberts and Munoz suffered severe burns and other injuries from the explosion and the discharge of hot water and steam.  ICSP was the worker's compensation insurance carrier for Savage.  As a result of the accident, ICSP was called upon to pay worker's compensation benefits to Roberts and Munoz under the policy of insurance with Savage.  These payments are ongoing.  At last update, ICSP has paid benefits to or on behalf of Roberts totaling $104,011.46, and to or on behalf of Munoz totaling $459,923.23.

4.2     Roberts and Munoz have asserted personal injury claims against Exxon for their injuries sustained in the accident of January 12, 2013.  Texas Labor Code Chapter 417 provides ICSP a "first money" right of subrogation against any third party which may be liable for a

compensable injury. However, Exxon has asserted that ICSP has waived its subrogation rights against it, and has requested written confirmation that ICSP will not be asserting subrogation rights pertaining to the accident of January 12, 2013.

4.3     On information and belief, Exxon recently settled Roberts' personal injury claim for several million dollars, for which at least a portion of which has funded. Exxon contends the amount and details of the settlement is confidential.

### V.  FIRST CLAIM FOR RELIEF – NEGLIGENCE AND/OR PREMISES LIABILITY

5.1     The accident of January 12, 2013 and the injuries sustained by Roberts and Munoz was proximately caused by the negligence of Exxon, for which it is liable.

5.2     Alternatively, Exxon is liable under a cause of action for premises liability for the injuries sustained by Roberts and Munoz. Exxon owned, occupied and/or exercised control over the premises on which Roberts and Munoz were injured, and the instrumentality which caused their injuries. Exxon's control or maintenance over the premises failed to meet the adequate standard or care, and created a condition on the premises which posed an unreasonable risk of harm. Exxon had actual or constructive knowledge of the danger posed by the premises defect. Exxon's conduct breached the standard of care to Roberts and Munoz, proximately causing the damages suffered by Roberts and Munoz, for which it is liable.

5.3     Pursuant to Tex. Labor Code § 417.001(b), Plaintiff is "subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary." Pursuant to this section, Plaintiff asserts the rights of Roberts and Munoz and enforces the liability of Exxon for the accident in the name of Roberts and Munoz. Plaintiff seeks to recover the entire amount of the damages sustained by Roberts and Munoz, and allocate the recovery as provided by this section. First, as provided by Tex.

Labor Code § 417.001(b)(1)&(2), Plaintiff would reimburse itself and pay the costs[1], and then tender the remainder of the amount recovered to Roberts and/or Munoz. Then, Plaintiff would assert its credit against future benefits pursuant to Tex. Labor Code § 417.002(b) in the net amount recovered by Roberts and/or Munoz.

5.4 Roberts and Munoz have sustained in the past, and will continue to sustain in the following elements of damages as a result of the accident and the tortuous conduct of Exxon, for which Exxon is liable:

(a) Physical pain and suffering;

(b) Mental anguish;

(c) Reasonable and necessary medical expenses paid or incurred for the treatment of Roberts and Munoz's injuries;

(d) Loss of earnings and/or earning capacity;

(e) Physical disablement and/or impairment; and

(f) Disfigurement.

## VI. SECOND CLAIM FOR RELIEF – CONVERSION

6.1 Exxon has unlawfully and without authority assumed dominion and control over Plaintiff's property to the exclusion of Plaintiff's right in the property. Exxon's settlement and payment of settlement funds to Roberts without reimbursing Plaintiff's subrogation lien constitutes conversion. *See Texas Mutual Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 38-39 (Tex. 2008) ("When an injured worker settles a case without reimbursing a compensation carrier, everyone involved is liable to the carrier for conversion – the plaintiffs, the plaintiffs' attorney,

---

[1] "Costs" in this context has been defined as the carrier's attorney's fees for prosecuting the claim. *See Jones v. Liberty Mutual Ins. Co.,* 745 S.W.2d 901, 902-903 (Tex. 1988); *Texas General Indemnity Co. v. Jones,* 601 S.W.2d 194 (Tex.Civ.App.--El Paso, 1980, no writ) and *Dover v. Casualty Reciprocal Exchange,* 410 S.W.2d 306 (Tex.Civ.App.--Amarillo 1966, no

and the defendants."); *see also Capitol Aggregates, Inc. v. Great American Ins. Co.,* 408 S.W.2d 922, 923-24 (Tex. 1966); *Prewitt and Sampson v. City of Dallas*, 713 S.W.2d 720, 722 (Tex.App.-Dallas 1986, writ ref'd n.r.e.); *Home Indemnity Co. v. Pate*, 814 S.W.2d 497 (Tex.App.-Houston[1st Dist.] 1991, no writ); *Employers Casualty Company v. Henager*, 852 S.W.2d 655, 659 (Tex.App.—Dallas 1993, writ den'd); *Houston General Ins. Co. v. Campbell,* 964 S.W.2d 691, 695 (Tex.App.—Corpus Christi 1998, review den'd) ("If a third-party tortfeasor and its insurer wrongfully pay out to the employee money that belongs to the compensation carrier, the third-party tortfeasor and its insurance company are liable for the total amount paid by the carrier."); *Performance Ins. Co. v. Frans,* 902 S.W.2d 582, 585 (Tex.App.---Houston [1st Dist.] 1995, writ denied); *Travelers Insurance Company v. Seidel*, 705 S.W.2d 278, 281 (Tex.App.-San Antonio 1986, writ dism'd). Plaintiff is entitled to recover from Exxon the value of its property as of the date at the time and place of the conversion.

## VII. THIRD CLAIM FOR RELIEF – DECLARATORY JUDGMENT

7.1     Pursuant to 28 USC § 2201 and Fed. Rule of Civ. Proc. 57, ICSP hereby seeks a declaratory judgment against Exxon that: 1) it has not waived its rights under Tex. Labor Code Chapter 417 to recover from Exxon the amount of benefits it has paid in the past, or a credit against future benefits; 2) that ICSP is entitled to reimbursement out of the net amount recovered by Roberts and/or Munoz in the amount of benefits it has paid or will have paid at the time of any third party recovery by Roberts and/or Munoz, pursuant to Tex. Labor Code § 417.002(a); and 3) that ICSP is entitled to a statutory credit against future worker's compensation benefits pursuant to Tex. Labor Code § 417.002(b).

---

writ)).

7.2     ICSP's insurance policy contains a Blanket Waiver of Subrogation Endorsement, which provides that ICSP shall waive its subrogation rights for limited occurrences. In particular, the endorsement provides in part:

> We have the right to recover our payments from anyone liable for an injury covered by this policy.  We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.
>
> This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.
>
> . . . .
>
> (X)   Blanket waiver
>       Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.

7.3     Contrary to Exxon's assertion, its contract with Savage does not require a waiver of subrogation based upon the facts of this case.  The paragraph cited by Exxon in support of its waiver provision, section 14(a), provides in relevant part:

> [Savage] and its insurer(s) providing coverage in this Section shall waive all rights of subrogation and/or contribution against [Exxon] and its Affiliates **to the extent liabilities are assumed by [Savage]**, except [Savage] expressly agrees not to cause itself or its insurer(s) to waive any rights of subrogation and/or contribution against [Exxon] and its Affiliates under any workers' compensation and employers' liability insurance, or similar social insurance in accordance with law which may be applicable to those employees of [Savage], when [Exxon] elects to furnish or arrange same.

(emphasis added).  This clause limits the waiver of subrogation to only those liabilities for which Savage is obligated to indemnify Exxon.  The Texas Supreme Court has recognized that a clause with substantially similar language did not waive the carrier's right of subrogation, when the corresponding indemnity clause does not apply.  *See Ken Petroleum Co., et al v. Questor Drilling Corp.*, et al, 24 S.W.3d 344 (Tex. 2000).  In that case, the contract between Ken

Petroleum and Questor contained mutual indemnification clauses, where the parties were required to indemnify each other for claims by their respective employees. The insurance cause then provided the following waiver clause: "For liabilities assumed hereunder by contractor [Questor], its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Operator. Operator [Ken Petroleum] will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes." *Ken Petroleum Co.,* 24 S.W.3d at 355. The Court found that the waiver provision did not apply to waive Ken Petroleum's insurance carrier's right of subrogation against Questor:

> Questor's contentions are not well-founded. Ken Petroleum agreed to cause its underwriters to waive their subrogation rights only as to amounts Ken Petroleum might have to pay under its agreement to indemnify Questor. Ken Petroleum did not agree to indemnify Questor for injuries to or the death of Questor's employees. To the contrary, Questor agreed that it would indemnify Ken Petroleum if a Questor employee were injured or killed. The foregoing provision did not waive the rights of the Underwriters to enforce, as subrogees, the indemnity obligations Questor owed to Ken Petroleum.

*Id.*

7.4    In this case, the indemnity clause in fact obligates Exxon to indemnify Savage for claims arising out of this accident:

> **12. Third Party Indemnity**. [Exxon] and [Savage] shall indemnify, defend, and hold each other harmless from all claims, demands, and causes of action asserted against the indemnitee by any third party (including, without limitation, [Exxon]'s and [Savage]'s employees) for personal injury, death, or loss of or damage to property resulting from the indemnitor's negligence, Gross Negligence or Willful Misconduct. Where personal injury, death, or loss of or damage to property is the result of joint negligence, Gross Negligence or Willful Misconduct of [Exxon] or [Savage], the indemnitor's duty of indemnification shall be in proportion to its allocable share of such joint negligence, Gross Negligence or Willful Misconduct. If either party is strictly liable under law, the other party's duty of indemnification shall be in the same proportion that its negligence, Gross Negligence or Willful Misconduct contributed to the personal injury, death, or loss of damage to property for which a party is strictly liable. The term "negligence" in these General Terms and Conditions shall include active or passive negligence. "Gross Negligence" is defined by the law governing the Order; however, if such law does not define the term "gross negligence," it means any act or failure to act (whether sole, joint or concurrent) which seriously and substantially deviates from a diligent course of action

or which is in reckless disregard of or indifference to the harmful consequences. "Willful Misconduct" is defined by the law governing the Order; however, if such law does not define the term "willful misconduct," it means and intentional disregard of good and prudent standards of performance or of any of the terms of the Order.

In particular, Roberts contended that his injuries were caused by the negligence and gross negligence of Exxon, not the negligence of Savage.2  As Savage did not agree in the contract to assume the liabilities for this accident, the waiver of subrogation clause of the contract is not triggered, and ICSP has therefore not agreed to waive its right of subrogation against Exxon. Alternatively, the indemnity clause is unenforceable, as it does not comply with the express negligence doctrine by providing that Savage is required to indemnify Exxon for its own negligence, and it does not comply with the conspicuousness requirement as nothing appears on the face of the contract to attract the attention of a reasonable person when he looks at it.  *See Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508 (Tex. 1993).  As there is no indemnity obligation on the part of Savage, there are no liabilities assumed by Savage, and there is no waiver of subrogation.

   7.5  In a recent case from this Division involving the application of a waiver clause to a worker's compensation carrier's subrogation rights, the reviewing court referenced the contract's indemnity clause in interpreting the scope of the limiting term of the waiver clause "as respects risks and liabilities assumed by Contractor. . . ."  In that case, the indemnity clause was so broad that it was clear that the employer was assuming the defendant's liability: "The state-court suit is a claim against St. Mary 'arising out of or related to bodily injury or death' of Select's employees for 'medical, compensation or other benefits.' (Id., ¶ 11.2). Under the

---

2 In an analogous context, the eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from terms of the policy and the pleadings of the third-party claimant. *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006).

unambiguous language of the MSC, Select assumed St. Mary's liability in that suit." *Liberty Ins. Corp. v. SM Energy,* 2012 U.S. Dist. LEXIS 174069 (S.D. Tex. Dec. 7, 2012). However, in this case the indemnity clause in Exxon's contract is not nearly as broad, and does not call for Savage to assume liability for the claims of Roberts and Munoz.

7.6  Additionally, even if ICSP's subrogation rights have not been waived, this does not waive ICSP's right to assert a credit against future benefits pursuant to Tex. Labor Code § 417.002(b) in the net amount of Roberts and/or Munoz's recovery.  In an analogous context involving a carrier's credit rights for future worker's compensation benefits to be paid under the The Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, the Fifth Circuit has held no fewer than five times that an enforceable waiver of subrogation does not waive the carrier's right to a credit against future benefits.  *See Petro-Weld, Inc. v. Luke,* 619 F.2d 418 (5th Cir. 1980); *Petroleum Helicopters, Inc. v. Collier,* 784 F.2d 644 (5th Cir. 1986); *Nicklos Drilling Co. v. Cowart,* 907 F.2d 1552 (5th Cir. 1990); *Jackson v. Land & Offshore Services, Inc.,* 855 F.2d 244 (5th Cir. 1988); *Kelly v. Red Fox Cos. of New Iberia, Inc.,* 123 Fed. Appx. 595 (5th Cir. 2005); *but see Am. Risk Funding Ins. Co. v. Lambert,* 59 S.W.3d 254, 259 (Tex. App.—Corpus Christi 2001, pet.denied); *Hartford Accident & Indem. Co. v. Buckland,* 882 S.W.2d 440, 444–56 (Tex.App.—Dallas 1994, writ denied).3  The right of offset or credit under the Texas Worker's Compensation Act for a third party recovery is substantially the same as the right provided under Section 933(f) of the Longshore Act.  Tex. Labor Code § 417.002 provides:

> Sec. 417.002.  RECOVERY IN THIRD-PARTY ACTION.  (a)  The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.

---

3 The Texas Supreme Court has never addressed this issue.

*Plaintiff's First Amended Original Complaint*  Page 9

    (b) Any amount recovered that exceeds the amount of the reimbursement required under Subsection (a) shall be treated as an advance against future benefits, including medical benefits, that the claimant is entitled to receive under this subtitle.

    (c) If the advance under Subsection (b) is adequate to cover all future benefits, the insurance carrier is not required to resume the payment of benefits. If the advance is insufficient, the insurance carrier shall resume the payment of benefits when the advance is exhausted.

The Texas statute dictates that any third-party recovery by a claimant be treated as an "advance" against future benefits, and that until the advance is exhausted, the carrier is not obligated to pay any future benefits. As it categorizes any third party recovery by the claimant as an advance fund which must first be exhausted, it is similar to "Section 33(f) [, which] fixes the liability of the employer-carrier for compensation in the future after a third party settlement or judgment has been obtained. It simply cannot be read to mean that the employer-carrier is liable to presently pay compensation in addition to the amount received from the third party without first exhausting that fund, and thus provide a double recovery in this case . . . ." *See Petro-Weld, Inc.,* 619 F.2d at 420-421. There is no rational basis to distinguish these holdings based upon the fact that they involve different statutes. They both involve worker's compensation statutes that have similar offset or credit provisions in their third-party recovery statutes. They are similar in that they provide a first money right of reimbursement to the carrier, and are intended to reduce the burden of insurance to the general public.4 Finally, a finding that a waiver in favor of Exxon also waived ICSP's right to assert a statutory credit against future benefits to Roberts and Munoz would be contrary to the provisions of the waiver endorsement, which provides that the agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

---

4 "First-money reimbursement is crucial to the worker's compensation system because it reduces costs for carriers (and thus employers, and thus the public) and prevents double recovery by

*Plaintiff's First Amended Original Complaint*                             Page 10

## VIII. PRAYER

8.1     WHEREFORE, ICSP prays that on final trial or hearing, ICSP recover as pleaded above, plus costs of Court, and such other and further relief to which ICSP may show itself justly entitled.

Respectfully submitted,

KELLY & SMITH, P.C.

*/s/ Loren R. Smith*
Loren R. Smith
State Bar No. 18643800
Attorney-in-charge
4305 Yoakum Boulevard
Houston, Texas 77006
(713) 861-9900
Facsimile:  (713) 861-7100
lsmith@ksmpc.com

ATTORNEYS FOR PLAINTIFF THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

### CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2014, a true and correct copy of the foregoing instrument has been served upon the following:

**_Via Facsimile: (713) 655-7727_**
Mike Morris
Tekell, Book, Allen & Morris, L.L.P.
1221 McKinney, Suite 4300
Houston, Texas 77010-2010

                                                  */s/ Loren R. Smith*
                                                  Loren R. Smith

---

workers."  *Tex. Mut. Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 35 (Tex. 2008).